We'll hear the next case, Five Star versus Liberty Mutual. Good morning. May it please the court. My name is Andrew Richards for the appellant. What we have here is simply an excessively stringent application of a general rule. That is my little curiosity. As you can imagine, I feel closer to this appeal than I might otherwise, since it has to do – and that doesn't make me biased. My chambers are just lovely, so don't worry about that. Especially electrical work, right? Electrical work is real good. Yeah, I haven't lost a clerk being electrocuted in two or three years now, so it's great. No, no, but seriously, it seems to – from my personal experience, we moved back in in 2012 into this building, and yet the work here seems to start from shortly before then and run on a couple years after. I'm just kind of curious about that. I cannot answer that, Your Honor, at this point. I could assume, based on my knowledge of 29 years of construction law, that you moved in and work was being worked around you. That's what I have to assume, but I cannot answer that question for sure. I could give you some deposition transcripts later on, though. Go ahead. Okay. So as I started out by saying, I believe this is an excessively stringent application of a general rule of law. We are talking about pleading here, not summary judgment, not a trial. It's a pleading. Despite the fact that Twombly and Iqbal – You had three opportunities to plead the claims. That's right, Your Honor. Yeah, and what I've been trying to figure out is you're claiming that you should have gotten paid more than you were paid, roughly $600,000. I don't see anywhere in the complaint what the contractual basis is for that. I mean, in other words, the complaint pleads proposed change orders, but it doesn't plead that any were accepted. I mean, some must have been accepted because you were paid $12 million more than the original contract price, but what is the contractual basis for the alleged underpayment? Well, it's very simple, Your Honor. In both the First Amendment complaint and Second Amendment complaint, which contain more facts than I have ever seen in a construction litigation complaint in 29 years, we not only list the subcontract itself, the original subcontract value, we list all the change orders, not just the global amount. We list all the change orders that were signed by the appellee. We also list all the proposed change orders, which were for work that was performed. They're in dispute. They did not sign a change order back to us because they must disagree that it's extra to the contract. It's not very complicated. It's all in the Second Amendment complaint. We listed all the extra work that was not agreed upon. But you characterize those change orders as proposed change orders. Correct. You don't allege that they were accepted. I mean, was there ever a meeting of the minds on those change orders? On some, yes. Some, no. It's very clear. Which ones? We don't know which ones. There was no meeting. I'm sorry. Yes, you do. Which ones? Was there agreement on where they failed to pay? Is that alleged? Which ones? Yes. Well, no. There has to be a meeting of the mind on the requested change and then a failure to pay for it. Correct. Is that alleged as to the $677,000 deficiency? What's alleged? There isn't a particular – you have two sets of changes, Your Honor, and I want to make sure we're all on the same page. You have change orders, which by definition are signed by both parties and agreed upon that was for work that was outside the scope of the original contract. And that's listed, if you look at the Second Amendment complaint, that's in paragraph 10. Now, we don't list which one of those in particular was not paid because they don't work like that. They were all in a payment application. They just – the amount, total amount was not paid. We can't tell anyone which ones they decided they were going to pay and not pay. We can't do that. Change orders that were signed by both sides? Yes. Paragraph – What's the total amount on those? Is that alleged in the complaint? Yes, it is. It's in the Second Amendment complaint, Your Honor.  What paragraph? I have to – if you look – if you start at paragraph 10 on any of the changes, A248 on the record on appeal, all right, it says that change is approved to by CWC, the appellee, and performed for five stars as follows. These change orders are change orders issued by the appellee. They know exactly what they are. So you can't look at it as if they didn't pay one of those change orders. We don't know which ones they didn't want to pay. How do we know? That's not – we couldn't know that. All we know is they agreed to pay it. We did the work. They should have paid all of them. Then, Your Honor, if you turn in the Second Amendment complaint to – on A253, paragraph 24, we list all of the other – we call them proposed change orders, Your Honor. Very simply, the only difference between the proposed change orders and change orders are the proposed change orders, they don't necessarily agree. That's for work outside the contract. The list of the proposed change orders, again, this is more information. I've had cases before you when you were in lower court, Your Honor. You've seen cases which pled a lot less than this. We've listed all these change order numbers here that are proposed. What's very interesting – There's a lot of detail. A lot. What I'm trying to figure out is the 677 alleged deficiency, what is the basis for that? Very simple, Your Honor. You take the original contract price. You add up all the change orders that are listed in paragraph 10 on A248. You add them all together. On the $13,470,000? That's correct, Your Honor. If you add that to the original contract minus the payments, that should breach your contract balance. It's that simple. We also have the extra work claims, which are for the proposed change orders. Now, these documents, what's very, very interesting is that the appellees' opposition to this appeal, they don't come out and say, we don't know what the nature of these claims are for, we don't know what they're saying. They can't because they know exactly what they're for. These designations in the proposed change orders, these documents were given to them. They just don't agree. As I said before, this is the amount of pleading that is required by the lower court. First, I have to ask, what should I have pled? Someone tell me what is the level of facts needed in a construction litigation case to put in a pleading, a pleading, Your Honor, not a summary judgment motion. It's a pleading. There is nothing in Iqbal Atwambly that helps us put these through. If you look at the superior court case we cite, there was much less. The original complaint would have sufficed under the superior court case. And quite frankly, at this point, to add any more facts, we would have to bring in our expert witness, which is not done until after the discovery is done. At this point, we're being asked to lay out all the facts for the cases that will go on a trial without any discovery. And I have to say, 29 years of construction litigation, the First Amendment complaint ---- I mean, some of your claims are for damages and delays. Yes. That you claim were caused by the GC's incompetent supervision, et cetera. Why aren't those claims barred by the no damages for delay clause? There were four exceptions that were set forth in our brief to no damage for delay clause, one of which is uncontemplated delays. I understand that, but calling an uncontemplated delay is a very strange phrase, because aren't delays generally ---- I mean, they're called delays because they're not contemplated. Well, Your Honor, it's not that simple. I gather it isn't. It's not, because if you read the two seminal cases in New York State, the Calis-Jarco and Carina Civetta cases, created those four ---- the four exceptions to the rule that bars a damage ---- a delay damage claim. And this is a pleading. We've laid out what they did wrong, the appellee. They don't oppose us by saying we didn't do this. All they said was they ---- If delays are pled, why aren't they ordinary garden variety delays that you find in construction projects all the time? Not when you're supposed to do your work in two years and it takes five. Absolutely not, Your Honor. Absolutely not. And it is too early in a stage of litigation to dismiss a delay damage claim based on just the fact that the subcontract has that. There are no cases cited by the appellee which mirrors this and shows how it's unfair. It's not in the interest of justice to do that. We've laid out enough for pleading to show that we are entitled to have our day in court to assess and claim delay damages. Thank you. We'll hear from the other side. Good morning, Your Honor. It's David Rosenberg for Caldwell. Your Honor, this is not an $85,000 dispute over a home remodel. This is a case, as Your Honor pointed out, this very courthouse. The original contract for the electrical work was $43 million. And there were change orders. There were significant change orders. And those change orders encompassed the additional time. But counsel has pointed out that in the proposed Second Amendment complaint, which is Paragraph 10, lays out $13 million worth of change orders signed by both sides. Right. So the allegation is that these were approved by both sides. And if you add up the $13.4 million and the original $44 million, you get a number that is above what was paid. Why doesn't that state a claim at least for that $600,000? Well, Your Honor, my adversary said you can't identify what it is that wasn't paid. That's not completely accurate. Each time a request for payment is put in, what we call a pay rec, the subcontractor has to put in a document. There is one, if you'll look at A43 of the record. And the numbers in A43, this is the last pay requisition that Five Star put in. Those numbers aren't the 643. At most, they're about $250,000. But now you're looking at the evidence and you're going beyond the pleading. I mean, the pleading could be wrong, but we have to accept it on its face at this point, right? As to the $600,000, perhaps, but we're also talking about $23 million, which they're claiming for delay damages, which they have waived expressly in the agreement. There is nothing in the pleadings. Before you get to the $23 million, as to the $677,000, why isn't there a breach of contract claim pled, sufficiently pled, because they've alleged we have, there is an agreement in paragraph 10. And when you do the math, we weren't paid what was agreed to. Your Honor, we're still at the pleading stage and I can't say that I can, without going into the facts, deny that conclusion. Does that mean we need to vacate and remand as to the $677,000 claim? I would say it's unfair to ask me that question. I'm not sure why it's unfair, but I'm asking it anyway. Go ahead. Your Honor, they may have met the burden on that one claim. Although they could have specified and should have specified where it came from. But you're right. Your Honor, in broad terms, they did allege an agreed amount, a payment which was less than that amount, and even under Twombly and Iqbal, I'm not going to tell the On the $23 million? Go ahead. On the $23 million, there's nothing other than their anticipation, personal anticipation. And, you know, the term unanticipated in the cases that were cited means it's a mutual non-anticipation of delay. This delay, first of all, was anticipated because there's a no damage for delay clause. So everybody knows there are going to be delays, and that's why you put that clause in. There is nothing other than bare ticking off of the elements from the New York State Court of Appeals decisions as to How about uncontemplated delays? What does that mean? Well, in the cases, they were extraordinary interfering matters. In the New York State cases, they were the extraordinary interfering matters that neither side, that neither side could have anticipated. And, by the way, there is no real delay here. They say that this continued until 2014. The only thing that happened in 2013 and 2014 Whether there was a delay, a real delay? Your Honor, I'll go back to the language of the statute. And the fact is that they pleaded nothing, none of the elements, nothing to support their bare bones setting forth of the principles from those cases. No support for their claim. And there's another significant thing in the record. If you look at one of their pay recs, or I'm sorry, their list of change orders, they've double-billed on this. There's a change order at page 232. Now, they say they're entitled to $23 million for delay claims. If you'll – Honors will look at page 232. Within the change orders, they list of that something like $13 million that Your Honor mentioned, Judge Chin. In there, look what the biggest item is. It's a $12,672,690 item for equitable contract adjustment. In other words, that's the delay claim there. So rather than proving their case, this change order list disproves their entire case. And they're relying on it. They've incorporated it into their pleading. They can't be pleading $23 million if they say that it's $12 million. And they can't get it twice. Your Honor, for a $23 million claim, something more has to be pleaded. It can't just be, oh, gosh, I didn't think it would take this long. I didn't think it would take this long. It's not a question of – the law is not, oh, the plaintiff can recover if the plaintiff miscalculated how long it would take to do a project. The law is if something extraordinary interferes beyond the comprehension initially of both parties and could not have been anticipated by both parties. That's the exception, unless you've got malfeasance, willful disregard, these other terms that clearly haven't been set forth. Haven't been alleged, you're saying? Well, other than they have a couple of paragraphs that they added. My problem is, and you may very well be right, but you seem to be edging towards a summary judgment rather than a motion to dismiss. Because we're talking about a whole lot of facts. I understand that you – believe me, that everything that's attached to the complaint or referred to it can be considered on this. But I'm concerned that we're talking about a whole lot of facts at the pleading stage. Now, I should warn you that I was on both panels that were reversed in both Twombly and Iqbal, so I may not know very much about this. I know that, Your Honor. But – Your Honor, and I know that this Court has ruled – well, I can – I'm not sure how to say it. On both those cases and subsequent cases, this Court has ruled both ways, depending on the panel, it seems. But this really – this is a $23 million claim. There has to be more flesh on the bone when you make a claim like that. We've had to go through three rounds now of motion practice. And Your Honor's right. You know, if this survives, what's going to happen next? It'll be a motion for summary judgment. We should not have to do that. There should be some at least argument in the papers, in the pleadings, that show that there's a real basis to waste more time of the courts and of the parties. And really, there isn't here. They're just naked assertions. They're exactly the language used originally in Twombly and then repeated in Iqbal. They're naked assertions and conclusory statements. There is nothing to show that this is at all a plausible claim. And moreover, if you look at the fact that the first complaint pleaded that the bad guys were both Caldwell and the government, GSA, and then somehow or other the GSA was taken out, that has to reflect on plausibility. There's no explanation for why originally the claim was that there were two parties responsible and then it became one. Are there no other questions? Thank you. We'll hear the rebuttal. We just argued. Well, I didn't. Your Honors and my counsel to my right just argued about facts the last seven minutes, all facts. No one's discussing law. It proves my point. This is a pleading. This is not a summary judgment motion. This is not a trial. What else should we have pled? Nothing came out from the appellee on its papers or its mouth saying, in a construction litigation case, we should have said X, Y, Z. Instead, the only person using conclusory allegations is the appellee here. Everything is about the facts. Yes, what's uncontemplated? Well, the case law is very clear. Some things are uncontemplated, some are excessively uncontemplated, and that is for the trier of fact. Not every case gets dismissed when you say it's uncontemplated delight. There's nothing cited in the appellee's papers supporting that. Hence, we need discovery. We've alleged in these, both the First Amendment complaint and Second Amendment complaint, a lot of, a lot of factual allegations. Can someone tell me under Iqbala-Twombly what I should have done in the Second Amendment complaint or First Amendment complaint to survive a motion to dismiss a pleading, a pleading, Your Honors? Now, one thing I want to mention. Sotomayor, being alleged in the Second Amendment complaint, other than the kind of poor performance, failure of coordination and supervision that you ordinarily see in construction projects. But there's nothing. To determine whether it's ordinary or not is for the trier of fact. You have to go through discovery. This is a pleading. How should I plead? It's excessive. I mean, an example would be a hurricane. You know, that's, that's. No, yeah, no, no, no. We did plead. All of the change orders, including the proposed change orders, created all of the delays. That's why it's pled there. The reason why the, why the construction project took three extra years is because of the excessive mismanagement. You have a provision that says in the event of delays, your only, it goes both ways, your only remedy is an extension of the completion date. Except for the four exceptions to the no damage for delay rule. And again, I don't understand how we dismiss this on a motion, on a pleading. And talking about the $12 million equitable contract adjustment, E-423 on page 8232, that's actually, Five Star actually submitted a request for a change order for some of its delay charges. They don't agree to it, but there's more cost. We just didn't submit them in the form of a change order. But the amount of facts pled here are more than sufficient to satisfy the pleading requirements of the federal court, Your Honor. Any further questions? No, thank you. Thank you. Moved and reserved this issue.